435 So.2d 821 (1983)
Blanca Nieve SOSA, Petitioner,
v.
KNIGHT-RIDDER NEWSPAPERS, INC., Respondent.
No. 61727.
Supreme Court of Florida.
July 21, 1983.
*822 Arnold R. Ginsberg of Horton, Perse and Ginsberg, and Rosen & Rosen, P.A., Miami, for petitioner.
Robert C. Ward and Steven Hunter of Adams, Ward, Hunter, Angones & Adams, Miami, for respondent.
OVERTON, Justice.
This is a petition to review a decision of the Third District Court of Appeal reported as Knight-Ridder Newspapers, Inc. v. Sosa, 407 So.2d 916 (Fla. 3d DCA 1982), which reversed the trial court's order granting petitioner a new trial. We find conflict with Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145 (Fla. 1980); Castlewood International Corp. v. LaFleur, 322 So.2d 520 (Fla. 1975); and Cloud v. Fallis, 110 So.2d 669 (Fla. 1959). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. The question in this cause concerns the district court's holding that the trial court abused its discretion in granting a new trial. The trial court had concluded in its order that respondent's counsel had improperly influenced the jury by commenting in final argument on matters not introduced into evidence and, further, that it had not properly instructed the jury concerning the employment status of the decedent. We quash the decision of the district court because we find that the trial court did not abuse its discretion in granting a new trial. We agree with the trial court's conclusion that there was improper comment in final argument upon matters not of record. We also find that the decedent's employment status was not only improperly presented to the jury, as held by the trial court, but that under the facts of this case the decedent's employment status was a question of law which should have been determined by the court and not by the jury.
This case involves a wrongful death action arising from an accident which caused the death of petitioner's fourteen-year-old son, Jose Lanza. The facts concerning the accident are undisputed. Jose was a news-carrier for the Miami News, and he and his mother had executed a news-carrier contract with The Miami News which stated that Jose was an employee of the paper under the terms of the contract. Jose and Albert Ruiz, who was also a news-carrier, were picked up in their neighborhood and taken by a newspaper distribution manager to another area of Miami to solicit new subscriptions as part of a subscription contest sponsored by the paper. The contest was voluntary and the news-carriers did not have to participate as a requirement of their employment. If they did participate, however, the news-carriers could win prizes. The neighborhood to be canvassed was assigned to the boys by the distribution manager.
After dropping the boys off to begin canvassing the neighborhood, the distribution manager saw Jose and Albert "fooling around" and he decided to split them up. He put Albert in his car and told Jose to continue on his own. When the distribution manager began to drive off with Albert in his car, Jose complained that he did not want to be left alone in the strange neighborhood and asked to be let in the car. The distribution manager, however, kept the car moving and Jose, who was running next to the car, fell and was run over. Jose's skull was fractured in the accident and he died a few days later.
Petitioner, as the personal representative of her son's estate, filed a wrongful death action against Knight-Ridder Newspapers, Inc., the publishers of The Miami News. The theory of petitioner's case at trial was that even if Jose was an employee under his contract as a news-carrier for the respondent, he was not acting within the course and scope of his employment when he participated in the newspaper solicitation *823 drive. The respondent newspaper denied liability and affirmatively pleaded that Jose was an employee at the time of the accident and that under chapter 440, Florida Statutes (1975), respondent's payment of workers' compensation benefits precluded petitioner from bringing a wrongful death action. Prior to trial petitioner filed a motion in limine to exclude from the jury any reference to workers' compensation payments; the motion was denied. The issue was raised again during the course of the trial. Counsel for the petitioner agreed that Jose's medical bills had been paid by the workers' compensation carrier and that they were not a proper element of damages in this wrongful death action. He agreed to withdraw the bills, which apparently had been marked for identification in evidence. Although counsel for the petitioner stated that he had "no objection to the fact that the defendant, through Travelers, paid these [medical] bills," he did "object to the fact that it was paid for [by] a workmen's compensation carrier." Petitioner's counsel also asked that before evidence of the payment of workers' compensation benefits was presented to the jury that he have an opportunity to properly object to the introduction of that evidence. No evidence of these medical expenses or the fact that they were paid by a workers' compensation insurance carrier was presented to the jury. The first mention of workers' compensation benefits to the jury came during final argument by counsel for the respondent. The respondent did introduce the news-carrier contract that stated Jose was an employee.
During final argument counsel for the respondent stated, "There were no money damages because they were all paid by workmen's compensation, which is another issue that I want to talk about." When counsel for the petitioner objected to this mention of workers' compensation, counsel for the respondent stated, "There was a stipulation that there was payment by workmen's compensation." Counsel for petitioner did not agree and stated, "There was a stipulation of payment, period. And I withdrew the medical bills." The objection was overruled and counsel for respondent continued as follows:
Workmen's compensation paid the bills and there were benefits received.
Now, if you are thinking in your minds that I am not going to go back and touch on damages, other than what I am going to talk to you about now, this is a very sympathetic case. But I think the damages are much less than $200,000.
It is not my job to tell you what it is. It is your job. I am not doing my job as a lawyer by telling you there were benefits received and workmen's compensation. They paid the bills and there were benefits.
Now, the reason that came into the case is because, and that is the same reason  the reason that that testimony was received was because if you are injured on the job and you are an employee, then you get a certain statutory workmen's compensation award. You cannot file a lawsuit against your employer.
The defense was that the boy was covered by workmen's compensation. And his parents have already got his compensation. They are not allowed to go to court to bring it.
Now, to be quite honest with you, in a case like this with a sympathetic character, right down the line, I think this boy was clearly an employee. His employment agreement is in the record and it even says it specifically.
After all the evidence was presented in the case, the petitioner moved for a directed verdict on the issue of Jose's status but the trial court reserved ruling and never directly ruled on the motion.
The case was submitted to a jury by special interrogatories on the issue of the decedent's employment status at the time of the accident. The applicable interrogatories and the answers given by the jury were as follows:
1. Whether the decedent, JOSE LANZA, was an employee of KNIGHT-RIDDER NEWSPAPERS, INC., a Florida corporation, d/b/a THE MIAMI HERALD PUBLISHING CO. and THE MIAMI *824 NEWS, or whether the decedent, JOSE LANZA, was an independent contractor?
We, the jury, find the decedent, JOSE LANZA was an employee of KNIGHT-RIDDER NEWSPAPERS, INC., etc.
Yes 
We, the jury, find the decedent, JOSE LANZA was an independent contractor.
____
(Please check one and one only).
If the answer to question number 1 above is "independent contractor," do not answer question number 2 but proceed on to question number 3.
If the answer to question number 1 is "employee," answer question number 2.
2. Whether the decedent, JOSE LANZA, at the time of his death, was engaged in activities within the course and scope of his employment with KNIGHT-RIDDER NEWSPAPERS, INC., a Florida corporation, d/b/a THE MIAMI HERALD PUBLISHING CO. and THE MIAMI NEWS?
YES Yes NO ____
In view of the jury's answers to the interrogatories, the trial court entered judgment for respondent.
The petitioner filed a motion for a new trial, contending that the verdict was contrary to the weight of the evidence and the law, that the trial court erred in failing to grant petitioner's motion in limine to prohibit reference to workers' compensation at trial, that the trial court erred in allowing respondent's counsel to refer to workers' compensation payments during final argument, and that the trial court erred in not granting petitioner's motion for a directed verdict because the evidence conclusively showed that Jose was not, as a matter of law, acting as an employee of the respondent at the time of the accident. The trial court granted the motion for new trial and in its order stated:
5. During the course of the litigation this Court ruled there existed questions of fact as to the decedent's status at the time of his death and concluded that the jury should determine the ultimate issue. In making this ruling that the jury should determine the ultimate issue, this Court believes it was the Court's responsibility to interpret the contract between the minor plaintiff and his employer. This, the Court did not do. There was no issue in this case concerning the fact that the minor plaintiff was an employee for The Miami Herald when the minor plaintiff was delivering newspapers. At the time of the incident sued upon, the minor plaintiff was not within the sphere of the duties contained within the contract. This Court believes it was the Court's responsibility to make that interpretation of the contract and to so inform the jury pursuant to a proper jury instruction, which this Court did not do. Since counsel for the defendants argued to the jury in closing argument the effect of the contract and its significance to the relationship of the parties, the Plaintiff's Motion for New Trial be and the same is hereby granted.
6. This Court also awards a new trial as it is the opinion of this Court, based upon the disclosures in the record, that there was no evidence presented by the defendants as to who sought to initiate the claim for workmen's compensation benefits allegedly received by the decedent's relatives. No evidence was presented by the defendants in this regard. There is no evidence in this record as to who initiated the request for workmen's compensation benefits after the decedent was killed. While counsel for the defendants argued benefits were properly requested and lawfully paid, there is no evidence in this record of this fact. Counsel for the defendants argued to this Court, outside of the presence of the jury, that the decedent's brother made the request for workmen's compensation benefits. Assuming there was evidence of this (of which there is none), this request would be insufficient. See [Bec Construction Corporation v. Gonzalez, 383 So.2d 1093 (Fla. 1st DCA 1980)]. In the instant cause the decedent's brother was *825 not the personal representative for the estate of the deceased. Whether or not workmen's compensation benefits were properly obtained or were lawfully obtained was kept from the jury.
7. This Court also grants the motion for new trial on the ground that this Court improperly allowed reference to collateral source to be made to the jury. The trial testimony reflects that counsel for the plaintiff agreed only that certain bills "have been paid." ... In closing argument, counsel for the defendants argued over the plaintiff's objection overruled by this Court ... that the bills were paid by the workmen's compensation carrier. The argument advanced by counsel for the defendants was predicated on facts not in evidence for which a new trial be and the same is hereby granted.

8. In view of the above findings, it is this Court's opinion that the jury has been deceived as to the force and credibility of the evidence and has been influenced by considerations outside the record.
(Original emphasis deleted; emphasis added.)
On appeal, the district court initially affirmed the trial court's order granting petitioner a new trial. On rehearing, however, the district court held that the trial court had abused its discretion in granting a new trial, and the original dissenting opinion was recast as the majority opinion. In vacating the order granting a new trial, the district court held:
The trial court abused its discretion in setting aside the verdict on the grounds that: (1) Confusion was created due to the trial court's failure to discuss with the jury the effect of the employment agreement between the deceased and the newspaper, and (2) It was improper to allow argument concerning workmen's compensation payments made to the plaintiff.
The district court concluded that since there was a stipulation by petitioner which allowed the respondent to argue that workers' compensation benefits had been paid and that petitioner did not request an instruction interpreting the employment agreement, petitioner was estopped from asserting error. On the basis of this reasoning, the district court reversed the trial court's order.
The discretionary authority of a trial judge evolved from the common law and exists for the purpose of allowing the judge
to prevent what he considers to be a miscarriage of justice. The historical origin is set forth in Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350 (4th Cir.1941)... . [T]he discretionary authority does not allow the trial judge to enter a judgment for one or the other litigant or to deny him a jury trial, but only allows him to grant another trial in order to correct the mistakes or to avoid the problem or problems he believes from his observation to have caused a miscarriage of justice.
Castlewood International Corp. v. LaFleur, 322 So.2d 520, 523 (Fla. 1975) (Overton, J., concurring). The trial judge "is on the scene and can actually see, hear, and observe all the participants," id., and thereby better evaluate the effect of improper actions on the jury. As a result, the general rule is that "a trial court's discretion to grant a new trial is `of such firmness that it would not be disturbed except on a clear showing of abuse... .'" Id. at 522 (quoting Cloud v. Fallis, 110 So.2d 669, 672 (Fla. 1959)). This is especially true where the error has been injected into the proceedings by the trial judge, in which case the trial judge's "view of the need for corrective action should be accorded additional weight." Id.
In this case we find the trial judge reasonably exercised his discretionary authority to grant a new trial because the record supports a conclusion that the jurors were influenced by considerations outside the record which affected their decision in this cause. More important, we find there was an error at law as to how the issue of Jose's status was resolved.
With reference to this first point, the district court relied on what it considered *826 a stipulation concerning the payment of workers' compensation benefits and its use for whatever purpose in the trial. The record reflects that the payment of workers' compensation benefits was discussed by counsel for each of the parties in two separate contexts. The first concerned the medical bills as an element of damages in the wrongful death action and the requirement under the wrongful death statute that such medical expenses could be recovered by the estate or a survivor only if they were obligated to pay or had paid those bills.[*] The second was the use of the payment and acceptance of workers' compensation benefits as evidence that at the time of the accident Jose was an employee of the respondent rather than a volunteer or an independent contractor. During the trial the petitioner agreed that Jose's medical bills had been paid and were not a proper element of damages. Petitioner objected, however, to any reference to workers' compensation with respect to the issue of Jose's status. There was also a contention that the request for payment of workers' compensation benefits came from an unauthorized source. Although the trial court had ruled that respondent could present evidence of the payment of workers' compensation benefits for the purpose of indicating an acceptance by petitioner of Jose's status as an employee, the respondent presented no such evidence to the jury. As noted above, the first mention of workers' compensation benefits to the jury came during final argument by counsel for the respondent. The trial judge recognized the impact the remarks concerning workers' compensation benefits had on the jury in rendering its verdict concerning Jose's status at the time of the accident. In the order granting a new trial, the trial court found that the statements by respondent's counsel concerning workers' compensation payments were not supported by the evidence and could have improperly influenced the jury. The record supports that conclusion.
The next issue concerns the trial court's conclusion that it erred in failing to interpret the employment contract for the jury. The employment status of Jose, under the circumstances of this case, was a question of law for judicial resolution. Although the district court stated that petitioner did not request an instruction concerning Jose's status at the time of the accident, the petitioner had moved for a directed verdict on the issue of Jose's status and the trial court reserved ruling and never specifically ruled on the motion. In the order granting a new trial, the trial court stated, "There was no issue ... concerning the fact that the minor plaintiff was an employee for the Miami Herald when the minor plaintiff was delivering newspapers," but determined that it was the court's responsibility to instruct the jury concerning the contract and, in particular, to advise the jury that "at the time of the incident sued upon, the minor plaintiff was not within the sphere of the duties contained within the contract."
The facts of how the accident occurred are not in dispute, and, therefore, the question of Jose's status at the time of the accident requires only an interpretation and application of the known facts to the law. We hold that the question was a matter of law which should have been decided by the trial judge and should not have been submitted to the jury even with the more expansive instructions suggested by the trial judge in his order granting a new trial. It was a matter of law for judicial resolution and not a matter of fact for jury determination. It is not appropriate in this proceeding to address the issue of Jose's status as a matter of law because that issue has neither been directly briefed nor argued.
For the reasons expressed, we find that a new trial is proper in this cause. The decision of the district court is quashed with directions to remand for a new trial in accordance with this opinion.
It is so ordered.
*827 ADKINS, EHRLICH and SHAW, JJ., concur.
ALDERMAN, C.J., and BOYD and McDONALD, JJ., dissent.
NOTES
[*] Section 768.21(5) and (6)(b), Florida Statutes (1981).