NIMMONS, Judge.
Appellant, the personal representative of the Estate of Danny Qualls, appeals from an order of the trial court granting a new trial. We affirm.
This is a personal injury suit brought by Danny Qualls[1] against William Stancato and Nationwide Mutual Fire Insurance Company for injuries which he received in a shooting incident wherein he was shot in the head by Stancato during an incident which occurred in front of the home of Mr. and Mrs. Tony Poulin. Qualls had given Poulin a ride home from a tavern one morning shortly after midnight for which Poulin *1199 had agreed to pay Qualls $15. Qualls waited in his ear while Poulin entered his house to get the $15. Instead, Poulin, apparently exhausted from the night’s activities, told his wife to pay Qualls and then promptly went to bed. Poulin slept through the ensuing events. When Qualls began knocking on Poulin’s front door, Mrs. Poulin became frightened and telephoned her neighbor, Stancato. She told Stancato that a man was breaking down her door. Stan-cato told her to call the police and that he would be right over. He armed himself with a .38 caliber revolver, proceeded to the Poulin home and confronted Qualls, who refused Poulin’s demands that Qualls leave. Qualls testified[2] that he remembered nothing about the confrontation with Stancato except Stancato’s approaching him and telling him that he had better leave and Quail’s response that he was about to leave. He remembered nothing thereafter nor did he remember anything about a gun or any threats.
Stancato testified that after Qualls refused to leave, he decided to go into the house to wait with Mrs. Poulin for the police to arrive. As Stancato went to open the door, he placed his hand on his gun, which was situated on his hip, in order to protect it. He said that Qualls ■ lunged at him and placed his hand on Stancato’s hand which was on the gun. As they struggled, Qualls slipped, pulling Stancato’s hand down and causing the gun to discharge by reason of the force of Qualls’ hand on Stancato’s hand.
Mrs. Poulin testified that she was looking through the peephole in her front door when she saw Stancato walk up and order Qualls off the premises. She said that she saw Qualls lunge at Stancato, at which time she saw Stancato holding a gun up in the air. She then moved away from the door and saw nothing further of the altercation. There were no other witnesses to the incident.
The jury returned a verdict finding Stan-cato 70% negligent, Qualls 30% negligent, and total damages to Qualls in the sum of $40,000. The order granting the defendants’ motion for new trial recited what the court regarded as the uncontroverted facts in the case which facts are essentially as summarized above. The order found that the defendants were entitled to a new trial basically because of (1) improper and prejudicial conduct by plaintiff’s counsel in the examination of various witnesses which had the effect of suggesting matters extraneous to the record and which may have improperly influenced the jury; (2) certain questions raised by the jury concerning the role of the defendant, Nationwide Mutual Fire Insurance Company, in the case; and (3) excessiveness of the verdict. We affirm the order for new trial on the first ground.
Throughout the trial, plaintiff’s counsel on several occasions, through patently improper questions and comments, implied that Mrs. Poulin had made several pretrial statements inconsistent with her testimony at trial. Plaintiff’s counsel was apparently attempting to show that Stancato had removed his gun prior to Qualls’ lunging at Stancato and that Stancato’s conduct in this regard provoked a reasonable defensive action by Qualls. Stancato’s testimony directly refuted that scenario. Although Mrs. Poulin’s testimony agreed in most respects with that of Stancato, she did testify that when Qualls lunged at Stancato, she saw Stancato holding the gun up in the air. Plaintiff’s counsel, who called Mrs. Poulin as a witness, was unable to elicit from her any stronger testimony which would demonstrate threatening or provocative conduct on the part of Stanca-to. Counsel, instead, improperly, and in spite of repeated admonitions by the trial court, pressed the inference that Mrs. Pou-lin had made previous statements favorable to the plaintiff regarding the manner in which the shooting occurred. We summarize counsel’s numerous efforts to elicit inadmissible evidence, the cumulative effect of which was prejudicial to the defendants.
*1200 Plaintiff’s counsel asked his first witness, Stancato, what Mrs. Poulin told Stan-cato she was doing at the time of the incident. Defense counsel’s hearsay objection was, of course, sustained. Plaintiff’s next witness was Mrs. Poulin. During her testimony describing what she had seen during the altercation, the following occurred:
“Q Did you ever say—
MR. FELTON: I’m going to object. This sounds like he is leading to impeachment of his witness.
MR. RICHESON: That’s exactly right. I’m entitled to — ”
During arguments on the objection outside the jury’s presence, the trial judge pointed out to plaintiff’s counsel that he obviously could not attempt to impeach Mrs. Poulin, his own witness, as counsel had not even attempted to lay any predicate which would allow him so to do. Moreover, counsel, during this colloquy with the court, was unable to show any reason why an exception should be made.
During his direct examination of Mr. Poulin, plaintiff’s counsel asked him what Mrs. Poulin had told him about the shooting. Defense counsel interposed an objection to which plaintiff’s counsel responded that he was “just trying to get the facts out.” Notwithstanding the court’s sustaining the objection, plaintiff’s counsel persisted:
“Q Okay. Did your wife tell you what she saw?
A Yes.
Q What did your wife tell you?”
The trial judge again sustained defense counsel’s objection and admonished plaintiff’s counsel to avoid further efforts in attempting to elicit such obviously inadmissible testimony.
The next similar incident occurred during the direct examination by plaintiff’s counsel of deputy sheriff Van Dyke who investigated the incident. Plaintiff’s counsel asked Van Dyke whether he had interviewed Mrs. Poulin. After responding that he had, the following occurred:
“Q What did Mrs. Poulin tell you?
MR. FELTON: Your honor, again we have certain rules of court, and Mr. Richeson continues to try to abuse those rules. He keeps asking for hearsay statements that he knows are not admissible and I object to them.
MR. RICHESON: Your honor, I’m not trying to abuse any rules of evidence. I’m just trying to ask the officer to tell me what his investigation revealed.
THE COURT: By asking him to tell you what a third party said, does that violate the hearsay rule?
MR. RICHESON: May I rephrase my question?
THE COURT: I asked: Does it violate the hearsay rule?
MR. RICHESON: I don’t believe so.
THE COURT: I do and I’ve so ruled.
MR. RICHESON: Okay. May I ask him—
THE COURT: Ask him anything you want, sir.
BY MR. RICHESON:
Q Okay. Mr. Van Dyke, did you talk to anyone at the scene?
A I talked to Mrs. Poulin.
Q What did Mrs. Poulin tell you?
MR. FELTON: Your honor, that’s the same question. This is getting abusive.
THE COURT: Bailiff, take the jury to the jury room, please.”
While the jury was out, the trial judge, who by now was entitled to feel a degree of exasperation, attempted to determine from plaintiff’s counsel how he could conceivably think that the testimony he persistently sought to elicit was admissible. Counsel gave the remarkable response that he considered the testimony admissible under the theory that the officer was refreshing his recollection by referring to his investigative report which apparently included statements made to him by Mrs. Poulin. Of course, as the trial judge pointed out to plaintiff’s counsel, the obviously hearsay statements of Mrs. Poulin were not rendered admissible even if the officer had been using his report to refresh his recollection. The judge also properly observed *1201 that no predicate had been laid by plaintiffs counsel for the officer’s use of the report to refresh his recollection. That is, neither counsel nor the witness had said anything about a need of the officer to have his recollection refreshed, either by reference to his offense report or otherwise. The trial judge sustained the objection but denied the defendant’s motion for mistrial.
The trial judge acted properly in granting a new trial based upon the conduct of counsel in improperly and repeatedly attempting to elicit inadmissible evidence. A motion for new trial is addressed to the sound discretion of the trial judge and will not be disturbed absent a clear showing of abuse of discretion. Cloud v. Fallis, 110 So.2d 669 (Fla.1959); Mead v. Bentley, 61 So.2d 428 (Fla.1952). If reasonable men could differ as to the propriety of the action taken by the trial court, then there is no abuse of discretion. Ford Motor Co. v. Kikis, 401 So.2d 1341 (Fla.1981). The assertion that plaintiff’s counsel (by virtue, we add, of the vigilance of defense counsel and the trial judge) was never permitted to actually elicit from any of the witnesses the inadmissible testimony which he so ardently and persistently pursued is unavailing where it can fairly be inferred that the jury was improperly influenced by the conduct of counsel in his efforts to elicit such testimony notwithstanding the court’s rulings and admonitions. See Ridarsick v. Amirkanian, 147 So.2d 580 (Fla. 3rd DCA 1963); 38 Fla.Jur.2d New Trial § 26.
Although we find that the trial court was justified in ordering a new trial on the basis discussed above, we do not agree with the court’s second and third grounds which he articulated in his order. The second ground had to do with certain questions which the jury asked regarding the role in the case of the defendant, Nationwide Mutual Fire Insurance Company. After the jury had deliberated for approximately 25 minutes, the jurors sent the trial judge a written question: “On whose behalf is Nationwide Insurance Company representation?” The judge informed them, “I really don’t know what [your question] means, but all I can tell you is William Stancato and Nationwide Insurance Company, I think is the real name of it, are both defendants.” The jury then retired for further deliberations. Approximately 15 minutes later, the judge answered a second question regarding that same subject: “The second question you propounded to me is irrelevant and immaterial at (sic) the issue that you have to decide. But to answer your question, ‘Whose property does Nationwide cover?’ the answer is Stancato, but it’s immaterial and irrelevant at (sic) issues that you have to decide.” No objection was raised as to the manner in which the judge responded to the questions and the jury retired to the jury room to further deliberate. Thirty-five minutes later, the jury returned its verdict.
In his order granting a new trial, the trial judge observed that it was apparent from the jurors’ questions and from the excessiveness of the verdict that the jury was influenced by the existence of insurance coverage. The amount of the verdict was not such as would support an order granting a new trial. With respect to the jurors’ questions regarding the status of Nationwide in the case, the jurors’ questions reflected a conscientious effort on their part to fully understand what their responsibility was with respect to that entity. Nationwide appeared on the verdict form in the style of the case as a party defendant. Although the judge mentioned Nationwide as well as the other parties during his jury instructions and although Nationwide appeared on the verdict form, there was no way for the jury to know what, if anything, was expected of them by reason of the existence of Nationwide as a party defendant. And so to suggest that the jury’s questions indicated an improper concern about insurance is perhaps an overstatement. Moreover, the judge informed the jurors that the Nationwide’s role was irrelevant to their deliberations.
Although grounds two and three of the order appealed were insufficient to support *1202 a new trial, we affirm the order on the basis of the first ground for the reasons mentioned above.
AFFIRMED.
MILLS and SMITH, JJ., concur.

. Danny Qualls died after filing this suit, and the personal representative of the estate was substituted as the party plaintiff. Qualls’ death was unrelated to the incident which gave rise to this suit.

. Qualls’ deposition, taken before his death, was read at the trial.