578 So.2d 760 (1991)
Robert CURRIE, As Personal Representative of the Estate of Michelle Currie, a Deceased Minor, Appellant/Cross Appellee,
v.
PALM BEACH COUNTY, Appellee/Cross Appellant.
Nos. 89-0561, 89-2413.
District Court of Appeal of Florida, Fourth District.
April 3, 1991.
*761 Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach and Geri Sue Straus of Lavalle, Wochna, Raymond & Rutherford, Boca Raton, for appellant/cross appellee.
Michael B. Davis of Davis, Hoy, Carroll & Isaacs, P.A., West Palm Beach, for appellee/cross appellant.
*762 HERSEY, Chief Judge.
These are consolidated appeals and cross appeals from two orders granting a new trial.
The action below arose from a collision between a motorcycle and an automobile. Michelle Currie, the passenger on the motorcycle, was killed. Suit was filed to recover damages for her estate and for her parents. Count I of the complaint alleged that Roger Richwagen negligently operated the motorcycle and Deborah Horrell negligently operated the automobile, causing Michelle to suffer the injuries from which she died. Count II alleged that the City of Delray Beach and Palm Beach County negligently permitted vegetation to obscure the view of motorists approaching the intersection, that this created a hazardous condition of which they knew or should have known, and that they failed to warn of that danger. The city is no longer a party to this appeal. The defendants asserted by way of affirmative defense that Michelle was herself negligent in failing to wear a helmet at the time of collision. The city and county also raised the defense of the sovereign immunity cap on damages.
The jury returned a verdict finding the county 45% negligent, the city 40% negligent, and Richwagen 15% negligent. The jury found Michelle not negligent and found that she had not failed to use a motorcycle helmet. The jury awarded damages of $25,000 to Michelle's estate, $950,000 to her father, and $950,000 to her mother.
The trial court sua sponte entered an order granting a new trial. Subsequently, the city and the county filed motions for new trial, alleging different and additional grounds than those originally relied on by the trial court as the basis for granting a new trial. These motions were granted.
The issues on appeal raised by the parties involve the propriety of each of the grounds relied on for granting a new trial, and the correctness of several rulings by the trial court during the course of the trial. We will treat the dispositive issues and will refer briefly to some of the other issues raised by the parties.
The original order granting a new trial provided as follows:
This matter came before the Court on its own motion. The estate of Michelle Currie brought suit as a result of Michelle's death. Michelle was a passenger on a motorcycle driven by Mr. Richwagen. Mr. Richwagen failed to stop at a stop sign while travelling at approximately 40 miles per hour in a 25-mile per hour speed zone, which resulted in an intersectional collision with a non-negligent driver. Miss Currie died several hours after the accident as a result of the injuries sustained. These facts were undisputed.
Mr. Richwagen claimed that he didn't see the stop sign. The Plaintiff's theory was that the City and County were negligent in failing to keep the grass and shrubs cut down on the road side so as not to obstruct the stop sign and ability of drivers to observe each other while approaching the intersection from different directions. There was competent evidence introduced to support a finding that the City and County were negligent and that this negligence was a contributing legal cause of the accident.
The Defendants contended that since the intersection was controlled by 4-way stop signs, there was no duty beyond keeping the stop signs free from obstructions. In addition, the Defendants contended that the sole cause of the accident was Mr. Richwagen's excessive speed and alcohol consumption prior to the accident.
Mr. Richwagen was in fact found guilty of manslaughter (the killing of a human being by culpable negligence) beyond and to the exclusion of every reasonable doubt by a jury. Strangely the jury in this case concluded that Mr. Richwagen's negligence only contributed 15% to Michelle's death. The defendants had a strong desire to introduce evidence of this conviction for obvious reasons. However, the court ruled that all evidence of this conviction or of prior criminal proceedings or the location of where Mr. Richwagen's deposition was taken *763 was to be excluded from presentation before the jury. Although unhappy with these rulings, the defendants['] attorneys complied with them and were careful to make sure that witnesses called by them who were involved in the prior criminal proceeding made no reference to it in the jury's presence.
The Plaintiffs likewise were disappointed in several of the court's rulings. Apparently, shortly after this accident City and County employees removed or cut down the shrubs, bushes, trees, etc., that the Plaintiff claimed were a contributing cause of the accident. The Plaintiff wished to introduce evidence of these facts, which the Court ruled inadmissable pursuant to FLA. STAT. 90.407 as a subsequent remedial measure. Unlike the defense attorney, the Plaintiff's attorney did not make a good faith effort to prevent this improper evidence from being submitted to the jury. Plaintiff's attorney continually over defense objections and the court's rulings managed by hook or by crook to express or imply that the defendants had undertaken remedial measures subsequent to the accident. While no single transgression of this sort standing alone would in my view justify a new trial, the cumulative effect of these improper tactics denied the defendants a fair trial.
An example of an additional improper and prejudicial tactic employed by Plaintiff's counsel took place in connection with a chemist, called by the defense. With this witness, Plaintiff's counsel continued asking an improper question in an increasingly loud voice over the objection by defendant and ruling of the court. By his question, Plaintiff's counsel improperly implied that the police chemist who had analyzed a blood sample taken from Mr. Richwagen several hours after the accident had formed an opinion that Mr. Richwagen's faculties were not impaired at the time of the accident.
The main thrust of this order is that appellant repeatedly interjected into the proceedings evidence of subsequent remedial measures taken by the city and county to remove the obstructing vegetation from the intersection. Where counsel's conduct appears to have been calculated to communicate prejudicial evidence to a jury, a trial court's order granting a new trial should be affirmed. See Qualls v. Stancato, 450 So.2d 1197 (Fla. 1st DCA 1984).
In a negligence action, section 90.407, Florida Statutes (1988), clearly prohibits use of evidence of subsequent remedial measures as an admission of prior negligence. Voynar v. Butler Mfg. Co., 463 So.2d 409 (Fla. 4th DCA), rev. denied, 475 So.2d 696 (Fla. 1985). There are, however, certain circumstances which justify the admission of evidence of subsequent remedial measures. For example, where one party takes the position that it was not possible to correct a certain condition before the operative event, evidence of subsequent remedial measures is admissible on the issue of the feasibility of taking precautionary measures. American Motors Corp. v. Ellis, 403 So.2d 459, 465 (Fla. 5th DCA 1981), rev. denied, 415 So.2d 1359 (Fla. 1982).
Another example of the permissible use of evidence of subsequent remedial action is to contradict evidence put on by the opposing party. See, e.g., Donahue v. Albertson's, Inc., 472 So.2d 482 (Fla. 4th DCA 1985); Florida Power & Light Co. v. Brinson, 67 So.2d 407 (Fla. 1953). Here the evidence was conflicting as to whether the obstructing vegetation, or some of it, had been cleared prior to the time of the accident.
Both of these examples of the limited appropriate use of evidence of subsequent remedial measures are cast in terms of defense, not offense. Therefore, the evidence was not admissible here. Because our review of the record leads us to conclude that, except for references in appellee's opening statements, it was appellant who first interjected this evidence into the trial and who attempted on several occasions to bring such evidence before the jury, we approve the trial court's finding in this regard. See Qualls, 450 So.2d at 1201.
As an additional basis for granting a new trial, the trial court refers to improper questions used by appellant's counsel to *764 suggest to the jury that the police chemist who analyzed Richwagen's blood sample had formed an opinion that Mr. Richwagen's faculties were not impaired at the time of the accident. The record supports a finding that counsel persisted in such improper questioning over appellee's objections and numerous adverse rulings. Further, appellant's counsel made comments during closing argument on this same issue which were not supported by the evidence. Thus, the trial court properly exercised its discretion in granting a new trial on this basis. See Sosa v. Knight-Ridder Newspapers, Inc., 435 So.2d 821 (Fla. 1983); see also Erie Ins. Co. v. Bushy, 394 So.2d 228 (Fla. 5th DCA 1981); Eastern S.S. Lines, Inc. v. Martial, 380 So.2d 1070 (Fla. 3d DCA), cert. denied, 388 So.2d 1115 (Fla. 1980).
As a third ground for granting a new trial, the court referred to the jury's finding that Richwagen was only 15% negligent. In its second order granting a new trial this ground was formalized as being "against the manifest weight of the evidence." We find this to be a very close question. There are several interpretations that could be placed upon the disputed facts of this case which could support the jury's assessment of 15% negligence.
However, even if a jury verdict is supported by substantial, competent evidence, the trial judge may determine that the verdict is not in accord with the manifest weight of the evidence or that the jury was misled as to the force and credibility of the evidence. A trial court's determination to grant a new trial on these grounds may be reversed only if the appellant makes a clear showing that the trial court's action constituted an abuse of discretion. Cloud v. Fallis, 110 So.2d 669 (Fla. 1959); Smith v. Brown, 525 So.2d 868 (Fla. 1988). If reasonable persons can differ as to the propriety of the trial court's action in granting a new trial, then the action is not unreasonable and there can be no finding of an abuse of discretion. Smith, 525 So.2d at 869-70. Applying that test here, we cannot say that the trial court abused its discretion.
We also review the propriety of the trial court's admission of certain testimony, although not dispositive of the issue on new trial. Nancy Mims, one of Michelle's high school teachers, was at home when she heard the crash and actually saw Michelle land in the street. She called 911 and then went outside to try to help Michelle. Her testimony described what she did at the time of the accident and immediately thereafter. Her testimony was neither emotional nor unduly graphic. We find no error in the admission of her testimony.
Lt. Richard Ackerman also testified, describing in graphic detail what he observed about Michelle's injuries. We agree with appellee that much of this testimony was irrelevant, some was merely cumulative, and, in general, the effect was to inflame the jury. The trial court recognized this in the second order for new trial. The appellate courts of Florida consistently have held that the determination of adverse and prejudicial effects upon a jury of improper evidence is peculiarly within the province of the trial judge, who is present and observes what transpires in the courtroom. What the trial court perceives from this superior vantage point may not be evident from a cold record. Sosa v. Knight-Ridder Newspapers, Inc., 435 So.2d 821, 825 (Fla. 1983). Further, where counsel presents inflammatory evidence calculated to prejudice the jury, the trial court may be reversed for refusing to grant a new trial. Kane Furniture Corp. v. Miranda, 506 So.2d 1061 (Fla. 2d DCA), rev. denied, 515 So.2d 230 (Fla. 1987).
Appellant further suggests that it was error to order a new trial on both liability and damages since none of the purported errors were relevant to the issue of damages. One of the issues tried to the jury was whether Michelle was comparatively negligent. Evidence on this issue necessarily impacts both liability and damages. The trial court properly ordered a new trial on both. See Rowlands v. Signal Constr. Co., 549 So.2d 1380 (Fla. 1989).
On cross appeal, appellee suggests that it was error to instruct the jury *765 that it might consider violation of section 316.2045(1), Florida Statutes (1981), as evidence of negligence. Assuming the jury could find, on the evidence presented to it, that appellant knew of the dangerous condition and failed either to remedy the situation or to warn of the danger, there is an element of intent involved. That is, it could be said that appellant intentionally failed to act. Thus the inaction was "willful." We previously have concluded, however, that the term "willful" used in the statute requires more than mere knowledge. Thunderbird Drive-In Theatre, Inc. v. Reed, 571 So.2d 1341 (Fla. 4th DCA 1990), petition for cert. filed (Fla. Oct. 15, 1990) (No. 76,810). It requires an intentional act of an unreasonable character in disregard of a known or obvious risk of such magnitude as to render it probable that harm would follow. Id. at 1344 (quoting W. Prosser and W. Keeton, Handbook of the Law of Torts § 34 at 213 (5th ed. 1984) as construed in Smith v. Sno Eagles Snowmobile Club, Inc., 823 F.2d 1193, 1198 (7th Cir.1987)). We hold that the level of willfulness contemplated by Thunderbird was not reached in this case and therefore it was error to give the instruction in question. We treat the issue of the applicability of section 768.28(9)(a), Florida Statutes (1981), only to the extent of noting that if the negligent omission by appellee did in fact reach the level of willfulness contemplated by Thunderbird, then the doctrine of sovereign immunity would seem to insulate appellee from liability for such acts or omissions by its agents.
At trial, testimony was introduced that the county and city failed to enforce landscaping codes. In addition, appellants were permitted to argue that the county and city were negligent in failing to enforce those codes. This was error. See Elliott v. City of Hollywood, 399 So.2d 507 (Fla. 4th DCA 1981); Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979).
On the issue of whether Richwagen's negligence was a contributing cause rather than a superseding, intervening cause, we hold that it was merely a contributing cause. Grier v. Bankers Land Co., 539 So.2d 552 (Fla. 4th DCA), rev. denied, 548 So.2d 662 (Fla. 1989).
In all respects other than as specifically indicated hereinbefore to the contrary, we affirm the rulings of the trial court. Particularly, we affirm the grant of a new trial.
AFFIRMED.
STONE and WARNER, JJ., concur.