816 So.2d 172 (2002)
Zachary C. DIXON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3249.
District Court of Appeal of Florida, Fourth District.
May 1, 2002.
Rehearing Denied May 30, 2002.
*173 Craig A. Boudreau, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Maria J. Patullo, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, C.J.
Zachary Dixon timely appeals after a jury convicted him of first degree murder with a firearm and carjacking with a firearm. He was sentenced to life in prison. He argues the trial court erred in denying his motion to suppress his statements made to police over the telephone after he had been arrested and invoked his rights to remain silent and to counsel. We agree and reverse his convictions.
On the Sunday afternoon in question, the victim was fatally shot while sitting in his car. His eleven-year old son, a passenger in the car, was the only eyewitness. The son testified that two men, one of whom had a gun, approached the car and demanded the victim's jewelry. The unarmed man took the son out of the car. He saw his father then get shot. The men pulled the victim out of the car and then drove it away.
Crime scene investigators located a portion of skin near the bullet hole in the victim's shirt. DNA analysis determined that the skin matched Dixon's DNA profile. Dixon was arrested, taken to the police station, and read his Miranda[1] rights. He invoked his right to remain silent and right to counsel.
Dixon was later booked into the jail. That night, the detective, while at home, received a page from someone in Miami. He called the number and the unnamed person at the other end[2] told him he wanted to set up a three-way phone conversation with Dixon at the jail. The detective then called the jail but could only arrange a conversation between himself and Dixon. On the phone, Dixon initiated the conversation by telling the detective that he wanted to make a "deal." The detective told Dixon that he could not make a deal, at which point Dixon said that the detective was "going to find my stuff all over that guy. I want a deal." The detective ended the call.
Dixon moved to suppress the detective's testimony regarding what he (Dixon) stated over the telephone. The court denied the motion and admitted the testimony at trial.
*174 The key issue in this appeal is whether Dixon voluntarily waived his Miranda rights during the phone call with the detective. The de novo standard applies to questions regarding the voluntariness of Miranda waivers. Connor v. State, 803 So.2d 598 (Fla.2001) (citations omitted). In Jennings v. State, 718 So.2d 144 (Fla.1998), the court held that a determination of both the voluntariness of a confession and a knowing and intelligent waiver of Miranda rights requires an examination of the totality of the circumstances. Id. at 150; accord Traylor v. State, 596 So.2d 957, 964 (Fla.1992).
While Miranda does not apply to volunteered statements, Traylor, 596 So.2d at 966, the state cannot escape the fact that the detective placed the phone call, not Dixon. Once he realized the detective was on the line, Dixon initiated only that he wanted to make a deal. Since he previously invoked his Miranda rights, since he was in jail, and since he did not make the phone call, we hold the detective should have obtained a waiver from him before continuing that conversation. A reasonable person would have concluded that continuing this conversation with Dixon would have led to an incriminating response. See Lukehart, 776 So.2d at 919 (rejecting claim that officers' interrogation after Lukehart invoked his right to counsel violated Traylor where Lukehart initiated the conversation by repeatedly stating that he wanted to tell detectives his side of the story, and where the questioning began only after Lukehart, at the officer's behest, had expressly waived his Miranda rights). Because the detective never obtained such a waiver, we hold the testimony should not have been admitted.
Our reversal on this issue moots our needs for further discussion on the remaining issues in this appeal.
REVERSED and REMANDED for a new trial.
HAZOURI, J., concurs.
MAY, J., dissents with opinion.
MAY, J., dissenting.
From the majority opinion, I must respectfully dissent. I disagree that the key issue is whether the defendant voluntarily waived his Miranda[3] rights during the phone call with the detective. I believe the relevant inquiry is whether the detective initiated "interrogation" of the defendant during the phone call, and not whether he simply initiated the phone call.

Miranda and its progeny require that Miranda warnings be given whenever custodial interrogation takes place. This is because of the coercive conditions that are inherent when suspects are questioned by "captors, who appear to control the suspect's fate, [and who] may create mutually reinforcing pressures that the Court has assumed will weaken the suspect's will."
Christmas v. State, 632 So.2d 1368, 1370 (Fla.1994) (citing Illinois v. Perkins, 496 U.S. 292, 297, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990).) See also Jones v. State, 748 So.2d 1012 (Fla.2000), cert. denied, 530 U.S. 1232, 120 S.Ct. 2666, 147 L.Ed.2d 279 (2000). However, when there is no custodial "interrogation," Miranda is not implicated.
Once a suspect has requested the help of a lawyer, no state agent can reinitiate interrogation on any offense throughout the period of custody unless the lawyer is present, although the suspect is free to volunteer a statement to police on his or her own initiative at any time on any subject in the absence of counsel....

*175 These guidelines apply only to statements obtained while in custody and through interrogation; they do not apply to volunteered statements initiated by the suspect or statements that are obtained in noncustodial settings or through means other than interrogation.
Traylor v. State, 596 So.2d 957, 966 (Fla. 1992) (footnotes omitted) (emphasis added). In footnote 17 of the Traylor opinion, the court specifically noted that for purposes of Article I, Section 9 of the Florida Constitution, interrogation occurs
when a person is subjected to express questions, or other words or actions, by a state agent, that a reasonable person would conclude are designed to lead to an incriminating response.
Id. at 966 (citation omitted).
The majority accurately sets out the relevant facts. Based upon those facts, several points are clear: (1) the defendant was in custody; (2) Miranda warnings were given; (3) the defendant invoked his right to remain silent; (4) the detective subsequently initiated a phone call to the defendant; (5) the defendant initiated conversation after the call was placed; and (6) the defendant made certain statements. But, did the detective initiate an interrogation? I think not. The detective did not subject the defendant to "express questions." This was not a lengthy conversation. It consisted of three statements, at which time the detective ended the call. Absent a custodial interrogation, Miranda does not apply. Thus, I would find, as did the trial court, that the defendant's statements were voluntary. I would affirm.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The man purported to be Dixon's uncle.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).