911 So.2d 1260 (2005)
Zachary DIXON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-4988.
District Court of Appeal of Florida, Fourth District.
October 5, 2005.
*1261 Jonathan R. Kaplan of the Law Offices of Kaplan & Hutchinson, P.A., West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Mark J. Hamel, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Zachary Carlton Dixon was tried by a jury and convicted of charges of first degree murder with a firearm and grand theft auto. Dixon appeals only the conviction of first degree murder with a firearm. We affirm.
This is the second appearance of this case before this court. In Dixon v. State, 816 So.2d 172 (Fla. 4th DCA 2002), we reversed Dixon's first trial based upon the admission of a statement that violated his Miranda[1] rights.
The facts of this case are summarized in this court's opinion in Dixon:
On the Sunday afternoon in question, the victim was fatally shot while sitting in his car. His eleven-year old son, a passenger in the car, was the only eyewitness. The son testified that two men, one of whom had a gun, approached the car and demanded the victim's jewelry. The unarmed man took the son out of the car. He saw his father then get shot. The men pulled the victim out of the car and then drove it away.
816 So.2d at 173.
During Dixon's second trial, Robert Powell, who lived in the apartment complex where the vehicle was at the time of the crime, testified that he was outside at the time the murder occurred and heard someone say minutes before the crime took place, "I will shoot the mother fucker." Powell did not actually witness the shooting of the victim or the theft of the victim's vehicle. Powell did not know who *1262 the person was speaking with or what the context of the conversation was. Dixon filed a motion in limine seeking to exclude this statement, which the trial court denied. The trial court also overruled Dixon's objection to the statement made during the trial.
Dixon's defense was that this was an attempted robbery gone awry, not premeditated murder. Dixon's counsel argued that the gun went off accidentally and that the evidence indicated Dixon was not cool, calm and collected, so as to indicate that the murder was premeditated. Powell's testimony was offered by the state to show Dixon's prior intent to kill the victim as evidence of premeditation.
Dixon argues the statement was not directly attributed to him where the witness who testified to the statement could not identify the speaker as Dixon, nor could the witness testify that the black male using the cell phone was referring to the intended victim, and therefore, the statement was inadmissible.
A trial court's decision to permit a statement into evidence will not be disturbed absent an abuse of discretion. K.V. v. State, 832 So.2d 264, 265 (Fla. 4th DCA 2002). Although trial courts have such discretion, it is limited by the rules of evidence. See Johnston v. State, 863 So.2d 271, 278 (Fla.2003); see also Sybers v. State, 841 So.2d 532, 545 (Fla. 1st DCA 2003). The state contends that the trial court did not abuse its discretion where the statement was relevant to show Dixon's premeditated intent to kill the victim. We agree.
"Relevant evidence is evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (2005). The following facts are relevant to the admissibility of the statement. Powell lived in the same neighborhood as Jennifer Williams (Williams) and was working on her car the morning of the murder. Williams was the wife of the victim, although they were separated at the time of the murder. Williams had seen Dixon the night before the crime occurred. Williams testified that she also saw Dixon on the morning of the crime and he was wearing a white t-shirt and black pants. When Powell went up to Williams's house to ask for some tools, he saw two black males leaving Williams's house, one of whom was wearing a white t-shirt and black pants. Powell testified that the man with the white t-shirt and black pants put a gun down his pants as he left Williams's house. Powell saw the two men walk to the back of the building and then he saw them, along with Williams's roommate, at the front of the building. Powell was still working on the car when he heard the black male, wearing a white t-shirt and black pants, on a cell phone saying that "he would shoot the mother fucker." Lamantra Williams (Lamantra), the victim's son, testified that during the incident the two men, while pulling at his dad's jewelry, were saying "take off your jewelry, I am going to kill you" repeatedly. Lamantra testified that the person pointing the gun at his father was wearing a white t-shirt and black jeans. The state's position, with which we agree, is that this statement made by Dixon just minutes before Williams was shot tended to prove Dixon's premeditation.
"Statements of an accused expressing an intent to kill, followed not too remotely by the act of killing, may be evidence of premeditation." Sierra v. State, 429 So.2d 832, 833 (Fla. 3d DCA 1983). In Sierra, the third district found both a general statement that the defendant would kill anyone and a separate statement that he would kill his wife relevant for establishing premeditation. Sierra, 429 So.2d at 833. Statements referring to hatred *1263 towards police officers or a plan to shoot one if stopped have also been found to be relevant as to a defendant's intent and state of mind. See Armstrong v. State, 642 So.2d 730, 736-37 (Fla.1994); State v. Escobar, 570 So.2d 1343, 1345 (Fla. 3d DCA 1990). The statement made by Dixon, similar to those in Sierra, Armstrong, and Escobar, expressed an intent to kill. The statement made by Dixon was followed more closely in time by the act of killing than in the facts of Sierra and Armstrong where, in Sierra, the statement was made several days before the murder and, in Armstrong, the admissible statement was made over a year before the murder. In the instant case, the murder occurred within minutes of when the statement was made.
Dixon argues that despite the temporal proximity, the statement is not relevant where it is not clear he was referring to Williams. The Florida Supreme Court in Hardy v. State, 716 So.2d 761 (Fla.1998), held that a defendant's statement made in reference to the Rodney King beating incident, during the two months prior to the charged murder, that "[i]f it ever came down to me and a cop, it was the cop" was admissible to show intent and motivation. Hardy, 716 So.2d at 764. The court in Hardy rejected the appellant's argument that such statement was irrelevant where it did not express an intent to kill a police officer, but instead expressed an intent that the defendant would not allow himself to get beat up by officers. Id. The court in Hardy stated that "[a]ny doubt about what Hardy intended by his statement was a question of fact that was properly left for the jury to resolve." Id. Similarly, in the instant case, any dispute about what Dixon meant by his statement was to be resolved by the jury.
We hold that the trial court did not abuse its discretion in admitting Powell's testimony and therefore affirm the conviction of first degree murder with a firearm.
Affirmed.
GUNTHER and WARNER, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).