933 So.2d 124 (2006)
Shaunda HAYES, Appellant,
v.
WAL-MART STORES, INC, Appellee.
No. 4D05-2526.
District Court of Appeal of Florida, Fourth District.
June 7, 2006.
Rehearing Denied August 3, 2006.
*125 Kimberly L. Boldt of Boldt Law Firm, Boca Raton, and Boone & Davis, P.A., Fort Lauderdale, for appellant.
Alejandro Suarez of Marlow, Connell, Valerius, Abrams, Adler, Newman, Lewis & Blevins, Coral Gables, for appellee.
HAZOURI, J.
Shaunda Hayes appeals from a final judgment in her favor after a trial on her negligence complaint against Wal-Mart Stores, Inc. Hayes raises two points on appeal. First, the trial court erred in prohibiting the cross-examination of defense experts concerning their reliance *126 upon a medical report in forming their opinions. Second, the trial court erred in denying Hayes's motion for new trial because the jury's apportionment of liability was contrary to the manifest weight of the evidence. We affirm on both points.
Hayes filed a complaint alleging that Wal-Mart negligently maintained its premises by allowing water to sit on the floor and not warning patrons of the wet, slippery floor. She alleged that Wal-Mart knew of the condition or that it existed for a sufficient length of time that Wal-Mart should have known of it. She further alleged bodily injury that consisted of injury to her left ankle and/or her low back. Wal-Mart's answer to the complaint denied the allegations and asserted Hayes's comparative negligence.
We dispose of the second issue first, i.e., that the jury's apportionment of liability was contrary to the manifest weight of the evidence. On the issue of liability, there were numerous witnesses called. Their testimony was in conflict as to negligence on the part of Wal-Mart Stores and the comparative negligence of Hayes. On the issue of liability, the jury reached a verdict after considering all of the testimony and the instructions of law on both parties' negligence. It found that Hayes was 90% negligent and Wal-Mart was 10% negligent.
In Allstate Insurance Co. v. Manasse, 707 So.2d 1110 (Fla.1998), (quoting Cloud v. Fallis, 110 So.2d 669, 673 (Fla. 1959)), the supreme court held:
The judicial determination on a motion for new trial is a discretionary act of the trial court:
When a motion for new trial is made it is directed to the sound, broad discretion of the trial judge, who because of his contact with the trial and his observation of the behavior of those upon whose testimony the finding of fact must be based is better positioned than any other one person fully to comprehend the processes by which the ultimate decision of the triers of fact, the jurors, is reached.
Id. at 1111. It is clear from a review of the record that there is a conflict in the testimony presented as to the issue of liability. It was not an abuse of discretion of the trial court to conclude that the jury's determination of the percentage of negligence for each party was not contrary to the manifest weight of the evidence and should not be disturbed.
We now turn our attention to Hayes's assertion that the trial court erred in prohibiting her counsel from cross-examining Wal-Mart's expert witnesses on damages concerning a medical report which they each relied upon in forming their opinions.
"A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion." Johnston v. State, 863 So.2d 271, 278 (Fla. 2003). "The trial court's discretion is limited by the rules of evidence." Id.
In the early stages of litigation, Hayes was examined by Wal-Mart's expert orthopedic surgeon, Dr. Martin B. Silverstein, for a compulsory physical examination (CPE). Dr. Silverstein's report reflects that he examined Hayes's ankle and her low back and opined that she had a permanent impairment of her left ankle in the range of 4-5% of the whole person. He noted that he disagreed with Dr. Sheinberg, Hayes's treating physician's, opinion that Hayes had a permanent impairment of 26% of the left ankle or 10% or the whole person. He also noted that her chronic low back syndrome was possibly aggravated by the long use of crutches after her ankle surgery. The permanent impairment which resulted from this "possible *127 aggravation" was in the range of 1-2% of the whole person, "at most." He further opined that she was not a candidate for any additional surgery and that although she may not be able to stand on her feet for eight hours a day in her job as a hairstylist, she certainly could work more than two days a week and at least four to six hours per day.
Dr. Silverstein became ill during the course of litigation and was not able to provide any expert testimony and, as a result, Hayes was examined by Dr. Verano Hermida, another orthopedic surgeon with Dr. Silverstein's group, for a second CPE. When Dr. Hermida saw Hayes, she told him that her back had not been hurting her for approximately one month. He did not examine her low back but only examined her ankle. He concluded, based upon his examination, that she had a permanent injury of the ankle but no permanent injury of the low back.
In addition to Dr. Hermida, Jeffrey Carlisle, Wal-Mart's vocational rehabilitation counselor, testified that he had met with Hayes, administered vocational tests and reviewed medical records. Based upon his review of all these materials, he opined that she was employable at a sedentary-level capacity such as a receptionist. Upon cross-examination by Hayes's counsel, Carlisle stated that in arriving at his opinion, although he had reviewed records including Dr. Silverstein's report, he had relied primarily on the treating doctors' reports and his own testing.
Wal-Mart's counsel, anticipating that Hayes's counsel would attempt to cross-examine Dr. Hermida and Carlisle concerning the contents of Dr. Silverstein's report, made a motion in limine arguing that Hayes's counsel should be prohibited from using this cross-examination as a conduit for admission of a medical report which would otherwise be inadmissible hearsay. The trial court was persuaded by Wal-Mart's counsel's argument and prohibited any inquiry of either Dr. Hermida or Carlisle concerning Dr. Silverstein's report.
Section 90.704, Florida Statutes (2005), provides:
The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, the expert at or before the trial. If the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed, the facts or data need not be admissible in evidence.
Section 90.705(1) provides:
(1) Unless otherwise required by the court, an expert may testify in terms of opinion or inferences and give reasons without prior disclosure of the underlying facts or data. On cross-examination the expert shall be required to specify the facts or data.
An expert may base his or her opinion on facts or data which may not be admissible in evidence if the facts or data are reasonably relied upon by such experts. However, inadmissible facts or data may not be introduced through the direct testimony of the expert. Under such circumstances, the expert may not be used as a conduit for the admission of evidence. See Dep't of Corr., State of Fla. v. Williams, 549 So.2d 1071 (Fla. 5th DCA 1989); Riggins v. Mariner Boat Works, Inc., 545 So.2d 430 (Fla. 2d DCA 1989); Smithson v. V.M.S. Realty, Inc., 536 So.2d 260 (Fla. 3d DCA 1988); 3-M Corp. McGhan Med. Reports Div. v. Brown, 475 So.2d 994 (Fla. 1st DCA 1985). Such prohibition does not apply when the expert is subjected to cross-examination. See Kelly v. State Farm Mut. Auto. Ins., 720 So.2d 1145 (Fla. 5th DCA 1998).
*128 In Kelly, the court agreed with Williams and held that "[n]ormally an expert witness may not be used as a conduit to place otherwise inadmissable [sic] evidence before a jury." Kelly, 720 So.2d at 1146. However, State Farm's expert, who performed a CPE on the plaintiff, testified that he could not find any purely objective evidence to suggest a permanent impairment partially basing his opinion on medical records compiled by other physicians. When Kelly attempted to cross-examine the surgeon about the evaluations of other physicians upon which the surgeon relied, the trial court sustained State Farm's objection that the evaluations by the other physicians were hearsay. Kelly was prevented from inquiring into the foundation of the surgeon's opinions.
In finding this to be error, the district court held:
When the surgeon testified on direct that he had based his opinion on the medical reports of other physicians, this opened the door for cross-examination by Kelly and it would have been proper for Kelly to then make full inquiry into the medical reports relied upon by the surgeon.
Id. at 1147. Once the door was opened as in Kelly, the trial court erred in prohibiting Hayes's counsel from cross-examining Dr. Hermida and Carlisle about their reliance on Dr. Silverstein's report.
Although the trial court erred in this regard, we conclude the error was harmless. There is nothing contained in Dr. Silverstein's report which causes us to conclude the determination of the damages in this case was affected by this error. On the issue of damages, the jury returned a verdict finding that Hayes had sustained a total of $115,000 for medical expenses and lost earnings. It determined that Hayes had zero damages for future medical expenses and lost earnings but awarded Hayes $150,000 for past pain and suffering.
Dr. Hermida's testimony on direct examination was that Hayes did not need any additional surgery and that although she had a permanent injury to her left ankle, she was employable. He arrived at the conclusion she had no permanent injury of the low back based upon her lack of complaints during his examination. This testimony by Dr. Hermida is not significantly different than the opinions, recommendations and diagnoses rendered in Dr. Silverstein's report.
As far as vocational expert, Carlisle, is concerned, he testified on direct examination that although he had reviewed Dr. Silverstein's report, he arrived at his opinion concerning her employability and limitations primarily based upon a review of the records of Hayes's treating physicians. His opinion that she could be employable at a sedentary job is not significantly different from the opinion expressed in Dr. Silverstein's report. Dr. Silverstein's report notes that although Hayes may not be able to stand on her feet for eight hours in her job as a hairstylist, she certainly could work more than two days a week and at least for four to six hours per day. Based upon the foregoing we find the error to be harmless.
Affirmed.
WARNER and GROSS, JJ., concur.