990 So.2d 639 (2008)
John THIGPEN, Appellant,
v.
UNITED PARCEL SERVICES, INC., Appellee.
No. 4D06-3933.
District Court of Appeal of Florida, Fourth District.
September 10, 2008.
*641 Philip M. Burlington of Burlington & Rockenbach, P.A., West Palm Beach, and Russell S. Adler and Shawn L. Birken of Rothstein Rosenfeldt Adler, Fort Lauderdale, for appellant.
Christopher N. Bellows, Kelly-Ann G. Cartwright and Erika R. Royal of Holland & Knight LLP, Miami, for appellee.
TAYLOR, J.
Plaintiff, John Thigpen, appeals the trial court's order setting aside a jury verdict for plaintiff and granting the defendant, United Parcel Services, Inc. (UPS,) a new trial. The trial court granted the new trial after determining that it had erroneously admitted irrelevant and unfairly prejudicial evidence, which resulted in an excessive verdict. Because we conclude that the trial court did not abuse its discretion in granting a new trial, we affirm.
Plaintiff sued UPS for allegedly retaliating against him for filing workers' compensation claims, in violation of section 440.205, Florida Statutes. He alleged that his UPS supervisors fabricated evidence that he failed to report non-delivery of a *642 package and then terminated him upon pretextual grounds. The jury found UPS liable and returned a verdict of $6 million for the plaintiff.
Plaintiff had worked for UPS for twenty years, fifteen of those years as a delivery driver at the UPS center in Deerfield Beach. In July 2001, he was terminated for misrepresenting his delivery records. According to plaintiff's supervisor, Bruce McGraw, the plaintiff's Diad record reflected that he had made more signed deliveries than he actually had.[1] UPS characterized this conduct as dishonest and tantamount to "stealing time" from the company. After a grievance through the union, the termination was set aside and plaintiff returned to work in October 2001.
In October 2001, plaintiff was terminated again for misrepresenting delivery records. According to plaintiff's supervisor, Chris Gerkin, a customer called on Monday, October 15, about a package containing medicine that had not been delivered. Plaintiff insisted that the package was not on his truck on October 15, but Gerkin said that he found the package on plaintiff's truck that evening. Because the tracking records indicated that plaintiff had made no attempt to deliver the package, yet failed to report the non-delivery, plaintiff was terminated. This time the termination was upheld after a union grievance hearing.
Plaintiff sued UPS, claiming that the company terminated him in July and October 2001 in retaliation for filing workers' compensation claims. He asserted that the stated ground for his discharge-dishonest conduct in reporting deliveries-was pretextual and predicated on events contrived by his supervisors. To support these assertions, plaintiff presented evidence on his theory of the company's motivation for terminating him and the method they used to bring about his termination.
At trial, plaintiff introduced evidence to show that he was terminated because of a campaign initiated by UPS to crack down on employees who were "injury repeaters." These were employees who had sustained multiple injuries on the job and frequently sought workers' compensation benefits. Plaintiff introduced an e-mail issued on May 1, 2001, by the package division manager for South Florida. The e-mail complained about the high incidence of "injury repeaters" and instructed managers and supervisors to monitor these employees and get them to improve their safety and work habits or to discharge them. Plaintiff also presented the testimony of UPS employees who attended a company meeting, where Bruce McGraw repeated the company's concern about excessive injuries and announced plans to address the problem.
Plaintiff's last work-related injury occurred on December 28, 2000, when he hurt his ankle stepping off his truck. He visited the company doctor and received pay for two days of work. Before that, plaintiff had last filed a claim for workers' compensation benefits in 1997. At trial, there was conflicting testimony regarding whether plaintiff, who had been injured only seven times during his twenty years on the job, even met the company's definition of an "injury repeater."
To prove his claim that UPS terminated him under false pretenses, as part of its plan to target "injury repeaters", plaintiff presented the deposition testimony of a former UPS supervisor, Guy Findeisen. Findeisen testified that he had worked at a *643 UPS center in Hialeah as a driver and supervisor until he left in 1987. He said that when he was there, his supervisor, Bill Hughes, taught him a way to set up an undesirable employee for termination through a "presheet audit," and that that he had personally "built the case" for truckers to be terminated through a fraudulent presheet audit. Findeisen explained how he would remove a package from the driver's truck after it had already been loaded and then falsify the records to make it appear that the driver had not bothered to deliver it. He testified as follows:
How the presheet audit, how the fabrication went. I go into your truck, I pick out five, six areas. Again, this time the package, one of the small packages, ABC, make sure it has a sequence number on it. I would hide it in my drawer. When the driver came back that night, I would say look Juan or whatever, you have a presheet audit, here are the numbers I'm looking for, I'll be back in minute ... go back in the truck, take the package and throw it back in again... He's definitely going to come up one short because it was not in the truck, so when that happened, it became an integrity problem.
Findeisen testified that he did this about five times and that he knew of at least two employees who were discharged as a result. He said he also knew other supervisors at his facility who had set up drivers in this same way, and that it was an "unwritten rule at UPS" and "an easy way to get rid of somebody." Findeisen testified that when he heard about the plaintiff's termination, he recognized that it was the exact same method he used to terminate employees. Findeisen acknowledged that he had no knowledge of supervisors at any UPS center other than his facility in Dade County setting up drivers in this fraudulent manner. He said that he was never told by anyonenot even his supervisor, Bill Hughesto discriminate against a driver because of workers' compensation. He further testified that he did not know any of the supervisors in the Deerfield facility where plaintiff worked, and that he had never worked with them or at their facility. Findeisen testified that he did not know if plaintiff's superiors had ever engaged in a deceitful termination. He conceded that he had no knowledge of the actual facts surrounding the plaintiff's discharge.
Before trial, UPS filed a motion in limine to exclude Guy Findeisen's testimony. UPS contended that his testimony was irrelevant to any issue in the present case and that plaintiff sought to introduce evidence of Findeisen's misconduct solely to suggest that UPS supervisors McGraw and Gerkin had a propensity for lying, fabricating evidence, and framing drivers in the same way as Findeisen. UPS argued that Findeisen's wrongdoing in Hialeah back in 1987 had nothing to do with the conduct of McGraw and Gerkin in Deerfield Beach in 2001. It maintained that Findeisen's misconduct was too remote in time and place to be relevant and was unconnected to any retaliation for filing workers' compensation claims. UPS further argued that any probative value of this testimony would be substantially outweighed by the danger of unfair prejudice.
The trial court denied UPS's motion in limine and allowed Findeisen's testimony into evidence at trial. The jury found UPS liable for unlawful workers' compensation retaliation and awarded the plaintiff $669,660.98 in economic damages, plus $5,330,339.02 in non-economic damages, for a total verdict of $6 million.
After the verdict, UPS filed motions for a new trial. The trial court granted its motion for a new trial, finding that Findeisen's *644 testimony of fraud, fabrication, and wrongful terminations in Hialeah in 1987 was not relevant to the present case, and that, even if such testimony was relevant, its probative value was outweighed by its prejudicial effect. In its written order granting a new trial, the court stated:
This court finds that the jury award of $5,330,339.02 in non economic damages was so excessive that it shocks the conscience of the court and could have been awarded only by a jury that had been inflamed by passion or prejudice. The court finds that the passion or prejudice was so great that there is a substantial likelihood that it affected the jury's determination of liability.
This court also finds that there is a substantial likelihood that the deposition of Guy Findeisen, which was read into evidence at trial, is what inflamed the jury. In his deposition, Mr. Findeisen told of his personal actions in wrongfully terminating four or five UPS employees. Mr. Findeisen's misconduct was not relevant in this case, and, even if it were, any probative value was greatly outweighed by the prejudicial effect of the misconduct.
Plaintiff appealed the order for a new trial, arguing that the trial court erred in reversing its ruling on the admission of Guy Findeisen's testimony. He further argues that the trial court erred in granting a new trial based on its determination that the jury's award for non-economic damages was excessive and in denying his motion for leave to amend to seek punitive damages.
Appellate review of an order granting a motion for a new trial is based on an abuse of discretion standard. Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145 (Fla.1980) (explaining that "[t]he trial judge is granted this discretionary power because it is impossible to establish a strict rule of law for every conceivable situation which could arise in the course of a trial"). "A trial court's discretion to grant a new trial is `of such firmness that it would not be disturbed except on a clear showing of abuse ...'" Cloud v. Fallis, 110 So.2d 669, 672 (Fla.1959); see also Currie v. Palm Beach County, 578 So.2d 760, 764 (Fla. 4th DCA 1991). Florida courts "consistently have held that the determination of adverse and prejudicial effects upon a jury of improper evidence is peculiarly within the province of the trial judge, who is present and observes what transpires in the courtroom." Currie, 578 So.2d at 764. When a trial judge has to decide whether to grant a new trial on the basis of evidentiary errors committed during the trial, the judge must determine if there was error and, if so, whether the error was substantially prejudicial. Ford v. Robinson, 403 So.2d 1379, 1382 (Fla. 4th DCA 1981). In so doing, the judge "sit[s] in essence as an appellate judge" and must grant a new trial if he or she concludes that reversible error has been committed. Id. (citing Collins Fruit Co. v. Giglio, 184 So.2d 447 (Fla. 2d DCA 1966)); see also Midtown Enters., Inc. v. Local Contractors, Inc., 785 So.2d 578, 580 (Fla. 3d DCA 2001); Krolick v. Monroe ex rel. Monroe, 909 So.2d 910, 914 (Fla. 2d DCA 2005).
"When reviewing the order granting a new trial, an appellate court must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of discretion. If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion." Brown v. Estate of A.P. Stuckey, 749 So.2d 490, 497-98 (Fla.1999).
*645 Moreover, a stronger showing has usually been required to reverse an order allowing a new trial than to reverse an order denying a motion for new trial. State Farm Fire & Cas. Co. v. Higgins, 788 So.2d 992, 1006 (Fla. 4th DCA 2001) (citing Cenvill Cmtys., Inc. v. Patti, 458 So.2d 778, 781 (Fla. 4th DCA 1984)). "[A] trial court's discretion to grant a new trial is `of such firmness that it would not be disturbed except on clear showing of abuse ...'" Id. (quoting Cloud, 110 So.2d at 672). Thus, an appellant bears a heavy burden in seeking to overturn grant of a new trial, and any abuse of discretion must appear on the record. Id.
The parties disagree as to the standard of review we should apply in this case. Generally, trial courts enjoy greater discretion when they grant a new trial on the ground that the verdict is contrary to the manifest weight of the evidence than when they grant a new trial on a purely legal issue. See Moss v. Appel, 718 So.2d 199, 201 (Fla. 4th DCA 1998). "The closer an issue comes to being purely legal in nature, the less discretion a trial court enjoys in ruling on a new trial motion." Id. (quoting Office Depot, Inc. v. Miller, 584 So.2d 587, 589 (Fla. 4th DCA 1991)). Plaintiff argues that because the trial judge in this case granted a new trial on the basis of an evidentiary error, we are on an "equal footing" in reviewing his decision and need not defer to his ruling. He relies on Midtown Enterprises., Inc. v. Local Contractors, Inc., 785 So.2d 578, 580 (Fla. 3d DCA 2001). However, we disagree with plaintiff's position that the error committed during these trial proceedings was "purely legal" and that we should apply a de novo standard of review to the order granting a new trial.[2]
Here, the order granting a new trial was based on the trial court's finding that Findeisen's testimony was not relevant, and if relevant, was more prejudicial than probative. Preliminary questions concerning these findings require a resolution of issues that are both legal and factual in nature. See § 90.105, Fla. Stat. It is well settled that "[t]he determination of relevancy is within the discretion of the trial court. Where a trial court has weighed probative value against prejudicial impact before reaching its decision to admit or exclude evidence, an appellate court will not overturn that decision absent a clear abuse of discretion." Sims v. Brown, 574 So.2d 131, 133 (Fla.1991) (quoting Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla. 4th DCA 1985) and agreeing that this is the correct standard to review a ruling on the admissibility of evidence under section 90.403, Florida Statutes). The supreme court explained that "[t]he weighing of relevance versus prejudice or confusion is best performed by the trial judge who is present and best able to compare the two." Id.
A trial court's discretion in determining the relevancy of evidence, however, is limited by the rules of evidence and applicable case law. Johnston v. State, 863 So.2d 271, 278 (Fla.2003); Hayes v. Wal-Mart Stores, Inc., 933 So.2d 124, 126 (Fla. 4th DCA 2006); Deville v. State, 917 So.2d 1058, 1059 (Fla. 4th DCA 2006); Dixon v. State, 911 So.2d 1260, 1262 (Fla. 4th DCA 2005); Reed v. State, 883 So.2d 387, 389 (Fla. 4th DCA 2004).
*646 To be relevant, evidence must tend to prove or disprove a material fact. § 90.401, Fla. Stat. It must have a tendency to establish a fact in controversy or to render a proposition more or less probable. Zabner v. Howard Johnson's, Inc. of Fla., 227 So.2d 543, 545 (Fla. 4th DCA 1969). Although relevant evidence is generally admissible, it may be excluded by the rules of evidence. Moreover, "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice...." § 90.403, Fla. Stat.
The trial judge determined post-trial that Findeisen's testimony was not relevant or, at best, had minimal probative value. Plaintiff argues that Findeisen's testimony was relevant as evidence of a modus operandi, or common scheme, used by UPS to establish pretextual grounds for terminating targeted employees. Plaintiff, however, failed to produce sufficient underlying facts to support this theory of admissibility. Testimony regarding the misconduct of Findeisen and his fellow supervisors in Hialeah some thirteen years before the events at issue in this case failed to rise to the level of "common scheme" evidence. Plaintiff was unable to show a connection between Findeisen's acts and those of McGraw and Gerkin. He presented no evidence that Findeisen's methods for setting up drivers for discharge were ordered or sanctioned by upper management at UPS, that they occurred beyond the confines of the Hialeah facility, or that they continued after Findeisen left UPS in 1987. Plaintiff presented no evidence suggesting a company-wide plan or corporate scheme for terminating employees in this manner. Further, as Findeisen acknowledged, these methods were never used to get rid of workers who sought workers' compensation benefits. As the trial court correctly noted, these unconnected acts were too remote in time, place, and purpose to be considered relevant. Thus, the trial court did not abuse its discretion in concluding that Findeisen's testimony evidence should have been excluded. See Sims, 574 So.2d at 133-34 (holding that report by hospital accreditation commission on defendant hospital's deficiencies was too remote in time to be relevant and stating that, to be relevant, particularly if remote in time, a prior dangerous condition or negligent cause of conduct must be shown to continue uncorrected up to the time of the act sued upon); McGough v. State, 302 So.2d 751, 754-55 (Fla.1974) (stating that remote acts are not relevant evidence; testimony as to acts occurring between 1959-1966 were too remote in time to events in 1970-71); Farnell v. State, 214 So.2d 753, 761 (Fla. 2d DCA 1968) (holding that evidence of acts reaching back nine or ten years to show a scheme or pattern for violating the law was inadmissible as too remote in time). See also Webb v. Level 3 Commc'ns, LLC, 167 Fed.Appx. 725, 730-31 (10th Cir.2006) (two-year old acts of employment discrimination were too remote in time to be considered in present-day case); Alexander v. City of Toledo, No. 99-3875, 2000 WL 1871693, *5 (6th Cir. Dec. 13, 2000) (plaintiff alleged hostile work environment, but the court determined an incident occurring ten years earlier was too remote in time to be considered as evidence); Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 856 (10th Cir.2000) (in employment discrimination action, court determined, "incidents which occurred either several years before the contested action or anytime after" are too remote); BE & K Constr. Co. v. N.L.R.B., 133 F.3d 1372, 1376 n. 10 (11th Cir.1997) (misconduct occurring twelve years earlier was too remote in time to be relevant).
*647 UPS contends that the trial court's post-trial ruling on Findeisen's testimony was not an abuse of discretion because this testimony was inadmissible as improper character or propensity evidence. We agree. Under section 90.404(1), Florida Statutes, evidence of a person's character or a trait of character is inadmissible to prove action in conformity with it on a particular occasion. Similarly, under section 90.404(2)(a), Florida Statutes, similar fact evidence of other "crimes, wrongs, or acts is inadmissible when used "solely to prove bad character or propensity." The trial court has broad discretion in determining the admissibility of other bad acts and in determining whether they are relevant to a fact in issue, or instead, are being used impermissibly to suggest a propensity for bad acts and bad character. See White v. State, 817 So.2d 799, 805-806 (Fla.2002).
Here, in finding that testimony regarding Findeisen's prior bad acts was inadmissible, the trial court necessarily concluded that this evidence was used solely for improper purposes: to suggest that UPS supervisors had a propensity for framing drivers and fabricating evidence against them and to prove that, in terminating plaintiff, plaintiff's supervisors acted in a manner consistent with Findeisen's bad behavior. See Midtown Enterprises, Inc., 785 So.2d at 580-81 (holding that evidence of subcontractor's "pattern of cheating" was not relevant to show bad character or propensity); Long Term Care Found., Inc. v. Martin, 778 So.2d 1100, 1102-03 (Fla. 5th DCA 2001) (allegations in a different lawsuit against defendant were not relevant and were highly prejudicial); Garcia v. Konckier, 771 So.2d 550 (Fla. 3d DCA 2000) (ordering a new trial in an action against a bar for negligent security where the trial court allowed testimony suggesting prior criminal behavior of deceased bar patron and his companions and repeated references to patron's gang affiliation; they were irrelevant and, thus, inadmissible); Jacobs v. Westgate, 766 So.2d 1175, 1181-82 (Fla. 3d DCA 2000) (holding that erroneous admission of tenant's bad character in negligence action against landlord was not harmless); Smith v. Hooligan's Pub & Oyster Bar, Ltd., 753 So.2d 596, 600 (Fla. 3d DCA 2000) (requiring new trial where evidence of bar patron's bad acts improperly admitted).
The trial court also based its order granting a new trial on its finding that the danger of unfair prejudice outweighed any relevance of Findeisen's testimony. See § 90.403, Fla. Stat. ("[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence ..."). This ruling was not an abuse of discretion. As discussed above, Findeisen's misconduct had little or no probative value in the jury's assessment of the conduct of plaintiff's supervisors in terminating plaintiff. Yet, the danger of unfair prejudice from this testimony was substantial, because it allowed the jury to consider not only the facts surrounding plaintiff's discharge from employment, but also events at other times and places that were not shown to be connected to the conduct of plaintiff's supervisors. Moreover, UPS's defense in this wrongful discharge/retaliation case rested largely upon the credibility of plaintiff's supervisors, McGraw and Gerkin. Introducing evidence of Findeisen's misconduct created a substantial risk that the jury would infer that McGraw and Gerkin must likewise be guilty of the same conduct.
As discussed above, the trial court correctly applied the rules of evidence and applicable case law in deciding that the Findeisen testimony should have been excluded. The court thus did not *648 abuse its discretion in ruling on this evidence. Further, the trial court did not abuse its discretion in granting a new trial after determining that this evidence "inflamed the passions of the jurors and affected their verdict against UPS." This determination was "peculiarly within the province of the trial judge," who could perceive from his superior vantage point what might not be evident from a cold record. Currie, 578 So.2d at 764 (citing Sosa v. Knight-Ridder Newspapers, Inc., 435 So.2d 821, 825 (Fla.1983)); Hayes, 933 So.2d at 126 (noting that the trial judge is better positioned to fully comprehend the processes by which ultimate decisions are made by the jury). "Mere disagreement from an appellate perspective is insufficient as a matter of law to overturn a trial court on the need for a new trial." Castlewood Int'l. Corp. v. LaFleur, 322 So.2d 520, 522 (Fla.1975).
For the reasons expressed above, we affirm the order granting the motion for a new trial.[3]
Affirmed.
DAVIDSON, LISA, Associate Judge, concurs.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
In Sims v. Brown, 574 So.2d 131 (Fla. 1991), the supreme court applied that most deferential form of the Canakaris standard of review for abuse of discretion. Sims made trial court decisions admitting or excluding evidence when probative value is measured against unfair prejudice virtually beyond review. Only when the appellate court can find a "clear[4] [e.s.] abuse of discretion" may the trial judge's decision be set aside. Because the Canakaris test itself requires that no reasonable judge would do as the trial judge did, one is hard pressed to deduce what the adjective clear is supposed to add to the standard of review.
Since then, however, the court seems to have sailed in a different tack. In Salazar v. State, ___ So.2d ___, 2008 WL 2678289 (Fla. Jul. 10, 2008), the court stated:
"This Court reviews evidentiary rulings for abuse of discretion. A judge's discretion is limited by the rules of evidence, Johnston v. State, 863 So.2d 271, 278 (Fla.2003), and by the principles of stare decisis. Cf. Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) ("Judges *649 dealing with cases essentially alike should reach the same result. Different results reached from substantially the same facts comport with neither logic nor reasonableness."). A trial court ruling constitutes an abuse of discretion if it is based `on an erroneous view of the law or on a clearly erroneous assessment of the evidence. (quoting Johnson v. State, 969 So.2d 938, 949 (Fla.2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2056, 170 L.Ed.2d 799 (2008))." [e.s.]
Salazar's reference to Canakaris is preceded by a cf. signal, thus hinting that Canakaris may be applied in a different way than the traditional "no reasonable judge would do the same." Instead, the court seems to be suggesting that outcomes contrary to the evidence rule are ipso facto an abuse of discretion. If so, that would seem to me to modify Sims's application of Canakaris as to the probative-versus-unfairly prejudicial equation.[5] I certainly hope so. In making this kind of relevancy decision virtually unreviewable, Sims is not coherent because it significantly weakens the legislative decision to create an Evidence Code of rules rather than mere guidelines.
Under the Evidence Code, the rule is that evidence is relevant if it has any tendency to make the existence of any fact having consequence more or less probable than it would be without the evidence. See § 90.401, Fla. Stat. (2007) ("Relevant evidence is evidence tending to prove or disprove a material fact."). Section 90.402 provides that "[a]ll relevant evidence is admissible, except as provided by law." [e.s.] Notice that the exception contained in the section 90.402 statutory rule of law does not say "except that the trial judge shall have discretion to decide otherwise." It says "except as provided by law." Nothing here suggests that the admission or exclusion of relevant evidence is discretionary.
The wide-spread assertion that relevancy is a discretionary call is a hangover from the pre-code days when evidence was evaluated under the common law with its varying formulations for admissibility under the totality of the circumstances. But the codification of a categorical rule defining relevancy and a prescription that all relevant evidence is admissible should have put an end to any thought of discretion. Indeed, in Taylor v. State, 601 So.2d 1304, 1305 (Fla. 4th DCA 1992), we said:
"[T]he state contends that in view of the admission of other evidence ... the exclusion of the father's statements was either not an abuse of discretion, or was harmless error. As to abuse of discretion, we cannot agree, since the trial court's discretion here was narrowly limited by the rules of evidence. Since Taylor's knowledge or state of mind as to the victim's condition was relevant under the charge tried, the evidence offered was admissible unless a proper basis for exclusion was demonstrated." [e.s.]
In this case the claim on trial was that plaintiff had suffered job injuries and was fired to avoid a workers compensation claim. He sought to prove that UPS had an unwritten, trumped-up, off-the-books, policy of doing just what he claimed. The evidence he offered was deposition testimony from a former supervisor precisely to that effect. In my opinion the Findeisen testimony manifestly was logically relevant.
Curiously, UPS did not argue at trial that the admission of Findeisen's testimony was discretionary. Instead UPS argued *650 that the testimony was simply not admissible by rule because it amounted to character or propensity evidence, which is generally, if not always, excluded under section 90.404(1). UPS argued that Findeisen's testimony smeared two of its supervisory personnel involved in the decision to terminate plaintiff and that Findeisen's experience was too aged for admission. The trial judge correctly rejected that argument during trial. The Code expressly permits evidence that a corporation acted in conformity with corporate policy.[6]
The argument that Findeisen's experience in the corporation was too remote to be reliable is misplaced in the organizational context of § 90.406. The fact that corporate policy is long-standing might make it appear to some jurors as only more likely rather than less so. The fact that time can change humans doesn't make temporal remoteness a reliable predictor as to corporate conduct. The time span between Findeisen's experience and plaintiff's termination is a factor of evidentiary weight, not of admissibility.
Evidence of a sub rosa policy to get rid of those with serious injuries and incipient workers compensation claims, given by a former supervisor in a position to know, directly supports plaintiff's claim as to the hidden reason for his termination and fits well within the rule of section 90.402. One may well wonder how an injured claimant would prove a real, secret, off-the-books, corporate policy to defeat his workers compensation rights other than by the kind of evidence here.[7] Because the testimony directly made plaintiff's claim more probably true, relevancy is simply undeniable.
The trial judge's grant of a new trial is founded entirely on his post-trial conclusion that this evidence turned out to be prejudicial and that the prejudice exceeds its probative value. This argument was raised for the first time by UPS after the verdict and represented a substantial change in position. Moreover, in granting the new trial on the basis that the evidence was improperly admitted under section 90.403, the trial judge articulated the wrong test. He failed to measure the testimony by weighing whether the probative value was substantially outweighed by unfair prejudice.[8] The trial judge entirely omitted the two critical modifiers (substantially and unfair) in stating his post-trial assessment on the record.
In weighing the claim of unfair prejudice against probative value, the trial court is required to consider the need for the evidence, the tendency of the evidence to suggest to the jury an improper basis for resolving the matter, the chain of inference *651 necessary to establish the material fact, and the effectiveness of a limiting instruction. Steverson v. State, 695 So.2d 687, 689 (Fla.1997). The Findeisen testimony has none of these tendencies and is essentially the only way of proving a hidden policy. The only "prejudice" mentioned by the trial judge is that the testimony was effective.
Any plaintiff's evidence is conceivably detrimental to defendant. Why else would plaintiff bother with it? See Williamson v. State, 681 So.2d 688, 696 (Fla.1996) ("Almost all evidence introduced during a criminal prosecution is prejudicial to a defendant."). As Professor Ehrhardt made clear:
"Most evidence that is admitted will be prejudicial or damaging to the party against whom it is offered. Section 90.403 does not bar this evidence; it applies to evidence which is directed to an improper purpose, such as evidence that inflames the jury or appeals improperly to the jury's emotions or that an accused committed the charged crime because of evidence of the bad or evil character of the accused. Only when that unfair prejudice substantially outweighs the probative value of the evidence is the evidence excluded." [e.s.]
Charles Ehrhardt, FLORIDA EVIDENCE, § 403.1 (2007 ed.).
The failure to show how the probative value of this evidence might be slight as compared to some specific substantial and unfair prejudice masks this suppressed truth: there is no unfair prejudice capable of being defined; hence the impossibility of describing how it could be legally unfair.[9] With large corporations who carry on activities at multiple locations throughout the country, as UPS does, it is illogical and surely unfair!to limit the introduction of evidence of invidious, secret, unwritten, corporate policy to persons in the corporate hierarchy and recent events located solely at a single location. Surely the antidote to the impact of this evidence should have been for UPS to present its own evidence contradicting such a hidden policy.
Which UPS did not even attempt to do in this case.
Because the majority opinion perpetuates the "not-in-front-of-the-children" culture that pervades trial court consideration and appellate review of the admissibility of evidence, denigrating the common sense of jurors, I would reverse.
NOTES
[1] The Diad is a computerized board carried by the driver, on which he scans information from the packages and enters information regarding the delivery. The information is downloaded at the end of the day and a printout is given to the driver's supervisor.
[2] In Tri-Pak Machinery, Inc. v. Hartshorn, 644 So.2d 118, 120 n. 1 (Fla. 2d DCA 1994), Judge Altenbernd questioned whether any error during a trial proceedings can be categorized as "purely legal." He observed that "the admissibility of evidence may involve purely legal questions, but the impact of any evidentiary ruling on a specific jury will involve human factors invisible on the face of an appellate record."
[3] Because we affirm the order for new trial, we need not address the remaining issues in this appeal. Plaintiff may renew his motion for leave to seek punitive damages upon remand and retrial of this case.
[4] Here we go again with the intensifier clear. Appellant's essential burden is to make the fact of error (or abuse of discretion) clear. What is added by sometimes intensifying this standard of review with the modifier clear? How would an abuse of discretion truly exist but not be clear? Is this another instance where the court is communicating soto voce to appellate judges a policy it doesn't want to spell out? See e.g. Bethesda Mem'l Hosp., Inc. v. Laska, 977 So.2d 804, 806 (Fla. 4th DCA 2008) ("We suppose that the Florida Supreme Court has prescribed this most forbearing standard of reviewan abuse of discretion that is not merely commonplace but partakes of something ineffably greaterbecause the reasons for relieving a party from a failure to answer a complaint timely are myriad yet singular. Whether to grant relief will be heavily affected by the trial judiciary's perceptions of local court conditions and requirements, as well as the mien of parties and lawyers, which are simply inaccessible to a cloistered appellate judiciary. Thus the Florida Supreme Court's requirement of gross abuse is, we think, its aphoristic direction to appellate judges that they should be as deferential to a trial judge's decision vacating a default as they can possibly be, upsetting it very rarely and only with undeniable provocation.").
[5] And then we would have a Puryear problem. See Puryear v. State, 810 So.2d 901 (Fla.2002) ("this Court does not intentionally overrule itself sub silentio.").
[6] § 90.406, Fla. Stat. (2007) ("Evidence of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is admissible to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice").
[7] How indeed! Isn't this the same kind of evidence Congress is using to show that Attorney General Gonzalez and the Justice Department improperly fired United States Attorneys?
[8] See Charles W. Ehrhardt, FLORIDA EVIDENCE § 403.1 (2007 ed.) ("The court must weigh the logical strength of the proffered evidence to prove a material fact or issue against the other facts in the record and balance it against the strength of the reason for exclusion. In undertaking this balancing, the trial judge may consider the need for the particular evidence, the availability of alternative means of proof, and the likelihood that the jury will follow a limiting instruction by the court. The burden is on the objecting party to demonstrate that the probative value is `substantively outweighed' by one of the countervailing factors.").
[9] This seems just another example of improperly using § 90.403 to make the admission of relevant evidence under § 90.402 function as discretionary, contrary to § 90.403's very limited purpose. The modifiers in § 90.403 (unfair and substantially) disclose a definite aim to have it apply only in highly specific circumstances. The fact that prejudice must be unfair undoubtedly means something more than that it may sway jurors as to the merits of the claim to which it is relevant. As Professor Ehrhardt pointed out above, § 90.403 is directed to "evidence that inflames the jury or appeals improperly to the jury's emotions." Neither is true in this case.