TAYLOR, J.,
dissenting.
I respectfully dissent. I would hold that the trial court did not abuse its discretion in excluding Florida’s abortion statute from the jury’s consideration at trial. First, I disagree with the majority’s conclusion that the statute applied to the mother in this case. Second, even if the statute did apply to the mother, the trial court appropriately exercised its discretion in excluding it from consideration at trial so as to avoid unfair prejudice and confusion of the issues.
Florida law prohibits abortions during the third trimester unless necessary to *1092 save the life or preserve the health of the pregnant woman. See § 390.0111(l)(a) & (b), Fla. Stat. (2008). The “third trimester” is defined under Florida law as “the weeks of pregnancy after the 24th week of pregnancy.” § 390.011(8), Fla. Stat. (2008). The term “pregnancy” is not defined in the statute.
As a preliminary matter, I disagree with the majority’s interpretation of the term “pregnancy” under section 390.011(8), Florida Statutes (2008). The majority holds that the weeks of pregnancy under the statute must be measured by the fetus’s gestational age, which begins with the mother’s last menstrual period.[6] However, section 390.011(8) refers to weeks of “pregnancy,” and does not mention the fetus’s gestational age.
Because the term “pregnancy” is undefined in the statute, the term is to be given its plain and ordinary meaning, which can be ascertained by reference to a dictionary. Rollins v. Pizzarelli, 761 So.2d 294, 298 (Fla.2000). Merriam-Webster’s Collegiate Dictionary defines “pregnancy” as the “condition of being pregnant” and defines “pregnant” as “containing a developing embryo, fetus, or unborn offspring within the body.” Merriam-Webster’s Collegiate Dictionary 979 (11th ed. 2012).
Under the plain meaning of the term, a woman cannot be “pregnant” without a developing embryo, fetus, or unborn offspring within her body. A woman is not “pregnant,” and therefore “pregnancy” has not begun, at the time of her last menstrual period. Accordingly, the dictionary definition of “pregnancy” indicates that a pregnancy begins, at the earliest, at conception.[7]
The majority contends that the term “weeks of pregnancy” is a term of art with a specialized meaning for the medical profession. However, when a term has both a common and a technical meaning, there is a presumption in favor of the common meaning unless the profession to which the technical term belongs is the legal profession. City of Tampa v. Thatcher Glass Corp. 445 So.2d 578, 579 n. 2 (Fla.1984). In this case, there is no indication that the legislature meant anything other than the common meaning of “pregnancy.” The presumption in favor of the common meaning applies. Had the legislature meant “gestational age” as measured from the last menstrual period, it could have easily said so.
Applying the plain meaning of section 390.011(8) would not lead to an unreasonable result or one clearly contrary to legislative intent. While the exact date of a fetus’s conception is generally unknown, it does not follow that the legislature necessarily intended for pregnancy to be measured from the last menstrual period. Pregnancy can be “measured either from the date of a woman’s [last menstrual period] or from conception, which is generally considered to occur two weeks after a woman’s [last menstrual period].” Greenville Women’s Clinic v. Bryant, 222 F.3d 157, 177 n. 3 (4th Cir.2000). Both of these measurements are approximate in nature. See City of Akron v. Akron Ctr. for Reprod. Health, Inc., 462 U.S. 416, 431 n. 15, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983). Whether a pregnancy is measured from *1093 the time of conception or from the beginning of the woman’s last menstrual period, there is no certain method of delineating precisely when a particular trimester begins. Id. Thus, because both methods are simply approximations, measuring pregnancy from the time of conception — which is consistent with the plain language of the statute — is not unreasonable or clearly contrary to legislative intent.[8]
Even if I were to agree that measuring the weeks of pregnancy by the fetus’s gestational age is a reasonable interpretation of the statute, my construction of the statute would not change. At a minimum, measuring the weeks of pregnancy from the point of conception would also be a reasonable interpretation of the statute.
Where there is more than one reasonable interpretation of a statute, the statute is ambiguous and this court may resort to principles of statutory construction to determine the meaning of the statute. Rollins, 761 So.2d at 297. In civil cases where the governing standard is set forth in a criminal statute, “it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute’s coverage.” Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). The rule of lenity “ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered.” United States v. Lanier, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Indeed, in Florida, the rule of lenity is not just an interpretive tool, but is also a statutory directive, requiring that any ambiguity in which statutory language is susceptible to differing constructions must be resolved in favor of the accused. Kasischke v. State, 991 So.2d 803, 814 (Fla.2008). Accordingly, even if measuring the weeks of pregnancy in section 390.011(8) by the fetus’s gestational age is a reasonable interpretation of the statute, the rule of lenity still dictates that we interpret the statute in favor of permitting an abortion until the 24th week of pregnancy as measured from the point of conception.
The majority suggests that in light of the trimester framework of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), section 390.011(8) must be interpreted using gestational age. However, while Roe relies upon weeks of gestational age in discussing fetal viability, Roe is not a statutory interpretation case and does not provide any guidance on how to interpret a statute which proscribes an abortion after a certain number of weeks of “pregnancy.”
Therefore, although there was evidence that the mother’s fetus had a gestational age of about twenty-four weeks at the time of the June 30th ultrasound, section 390.0111 would not have precluded her from obtaining an abortion in Florida at that time had she been properly notified of the fetus’s defects.[9] Because the mother *1094 was not in the third trimester under Florida law,[10] the statute would not have precluded her from obtaining an abortion at the time of the ultrasound on June 30, 2008, and the trial court’s exclusion of section 390.0111 from the jury’s consideration was not an abuse of discretion.
Furthermore, even if the mother was past the deadline for obtaining a legal abortion under Florida law, the mother could have obtained an abortion outside the state of Florida. Contrary to the majority’s suggestion, the availability of an abortion to the mother in another jurisdiction cannot be seriously questioned. For example, Maryland allows abortions in the third trimester where the “fetus is affected by a genetic defect or serious deformity or abnormality.” Md. Code, Health — General, § 20 — 209(b)(2)(h) (2008). In this case, there was undisputed evidence at trial that the mother’s child was born with severe deformities. In light of this undisputed evidence, the Maryland statute would have allowed the mother to obtain an abortion in Maryland as a matter of law.[11]
The trial court’s decision to exclude Florida’s abortion statute from the jury’s consideration must be viewed in light of the nature of the plaintiffs’ claim. A wrongful birth claim requires proof that negligent treatment or advice deprived the plaintiffs of the opportunity to avoid conception or to terminate the pregnancy. Kush v. Lloyd, 616 So.2d 415, 417 n. 2 (Fla.1992). The purpose of a wrongful birth claim is to recover damages for the extraordinary expense of caring for the impaired or deformed child, over and above routine rearing expenses. Id.
Our supreme court has never articulated any requirement that the plaintiff in a wrongful birth case must prove exactly where the abortion would have occurred. Nor have the defendants even challenged the sufficiency of the evidence in this case.
Assuming Florida’s abortion statute was relevant, the exclusion of that statute from the jury’s consideration still was not an abuse of discretion. Section 90.403, Florida Statutes, renders otherwise relevant evidence inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or the possibility that the jury may be misled.
“The weighing of relevance versus prejudice or confusion is best performed by the trial judge who is present and best able to compare the two.” Sims v. Brown, 574 So.2d 131, 133 (Fla.1991). Here, as noted above, the mother could have obtained an abortion in another jurisdiction *1095 had she been informed of the fetus’s deformities. The defendants’ attempt to make an issue over whether the abortion could have occurred in Florida was nothing more than an obfuscation of the true issue in this case, which was whether the plaintiffs were robbed of the opportunity to terminate the pregnancy as a result of the defendants’ malpractice.[12] The trial court was well within its discretion to prevent a mini-trial on a largely irrelevant issue concerning the logistics of obtaining a hypothetical abortion.
Presenting the jury with evidence that a third trimester abortion is generally illegal in Florida would have been unfairly prejudicial and would have confused the issues in the case. This evidence would have unfairly injected the plaintiffs’ financial status into the case by opening an inquiry into whether they could afford to travel to another jurisdiction for the abortion. This evidence also could have unfairly painted the plaintiffs as doing something nefarious by traveling to another jurisdiction to evade the requirements of Florida law.
Under the abuse of discretion standard of review, a trial court’s ruling on the admissibility of evidence will be upheld absent an abuse of discretion. Thigpen v. United Parcel Servs., Inc., 990 So.2d 639, 645 (Fla. 4th DCA 2008); Hayes v. Wal-Mart Stores, Inc., 933 So.2d 124, 126 (Fla. 4th DCA 2006). If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). In this case, the defendants have failed to demonstrate that no reasonable person would have made the decision to exclude evidence concerning Florida’s abortion statute from the jury’s consideration.
Because I find no reversible error in any of the issues raised by the defendants, I would affirm.

. Any reference to "gestational age” in this opinion will refer to gestational age as measured from the last menstrual period.

. There is an added complication in that some medical texts describe pregnancy as beginning at implantation, rather than conception. As one court noted: “Standard medical texts describe the beginning of pregnancy as the time of implantation of a zygote into the uterus, about six days after conception.” Karlin v. Foust, 975 F.Supp. 1177, 1193 (W.D.Wis.1997), rev’d in part on other grounds, 188 F.3d 446 (7th Cir.1999).

. In fact, other state abortion statutes contain provisions measuring weeks of pregnancy from the point of conception. See, e.g., S.C. Code § 44 — 41—10(i) (2008) (measuring weeks of pregnancy as "commencing with conception rather than computed on the basis of the menstrual cycle”); Nev. Stat. §§ 442.250 l.(b), 442.253 l.(b) (2008) (allowing abortions within twenty-four weeks after the commencement of the pregnancy and requiring the physician to inform the pregnant woman of the "number of weeks which have elapsed from the probable time of conception”).

. The majority argues that even if the statute should be interpreted to measure pregnancy from the time of conception, thereby allowing the mother nearly two weeks after the June 30th ultrasound to obtain a lawful abortion under Florida law, "the existence of section 390.0111 would still be relevant to whether the mother could have logistically obtained an abortion in Florida before the statutory deadline.” However, the defendants never raised this precise argument below, nor did they proffer exactly what evidence of logistical obstacles to an abortion that they wanted to present to the jury. Therefore, this argument *1094 was not preserved and cannot be a valid basis for reversing the trial court.

. Among other things, the defendants argued below that: 1) all the medical experts agreed that on June 30th, the mother was in her third trimester under Florida law; and 2) at a minimum, the method of counting the length of the pregnancy presented a "question of fact.” However, these arguments miss the mark. The proper interpretation of section 390.011(8) is a question of law, not a question of fact, and the medical experts were not qualified to give an opinion on Florida law. The correct meaning of section 390.011(8) is a question for a court to decide. Cf. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.”).

. The mother also could have obtained an abortion in South Carolina. See S.C. Code § 44-41-20 (2008) (allowing a second trimester abortion if "performed with the pregnant woman’s consent by her attending physician in a hospital or clinic certified by the Department”); S.C. Code § 44-41-10(i) (2008) (measuring weeks of pregnancy as "commencing with conception rather than computed on the basis of the menstrual cycle”); S.C. Code § 44 — 41—10(j) (2008) (defining "second trimester” as the portion of a pregnancy following the twelfth week and extending through the twenty-fourth week).

. Contrary to the suggestion by the majority, the plaintiffs have not requested that this court impose a duty on a physician to provide information to a patient about where she could legally undergo a third trimester abortion.